United States District Court
Eastern District of Wisconsin

Brian Maus

      plaintiff           Case No.

Vs                   09-cv-42

Bill Greening, et al
         Defendants

2012 DEC -5 A 11:55
EASTERN DISTRICT-WI
FILED
DISTRICT M. CLERK
FILE REC'D

Motion For A New Trial

Now comes The plaintiff Brian maus and moves The court to vacate The Jury verdict of october 30, 2012, and grant maus a new Trial based on The following grounds:

The plaintiff had less then (5) hours to use The law library and research The issue's on this case; sence The court's order of November 13, 2012.

Memorandum of law

Argument (1)

The court abused its discretion. when it made an order on october 15, 2012. That maus appear in court weaning prison Green's and restraints. (Doc-120).

on october 29, 30, 2012. The court had maus, brung to court in prison Green's

and restraints and praided around in the courtroom infront of (8) Jury members.

The court didn't only abuse its discretion Lemons v. Skidmore 985 F.2d 354 (7th Cir. 1993), but made the Jury highly prejudice against maus because they didn't see him as a person, but as an inmate that was very violate and dangerous.

Maus wasn't only sueing the defendants "police officer's" for useing excessive force against him during a cell extraction, but the police where allowed to testify against maus, and make him look and sound like a very violate and dangerous inmate. Sandees v. welborn, 2011 U.S. Dist. Lexis. 43306 Id. at 6, and Williams v. Blagojevich, 2011 U.S. Dist. Lexis. 23512 Id at 4.

The court didn't take any measure's to stop the Jury from reviewing maus in prison clothes and restraints. welborn and Blagojevich

The court had maus marched inside and outside the courtroom, and sit infront of all the Jury members in full prison greens and restraints. while (20) to (25) police officers in full police uniforms sat in different parts of the courtroom

even next to MAUS. Ford V. Bell 2012 U.S. Dist.
Lexis. 57324 and Bember v. Becker 1995
U.S. Dist. Lexis. 725.

The court had MAUS looking like he
was some very violent and dangerous
inmate that couldn't be controlled without
full restraints. While the court allowed all
the defendant's to appear in court in full
police uniforms making MAUS look more
violent and dangerous.

When MAUS went to get on the witness
stand to testify against the defendants for
useing excessive force against him. Judge
Randa ordered the (2) correctional officers
that where with MAUS, to remove the hand-
cuffs off of MAUS infront of the Jury. Then
had MAUS sit on the witness stand while
the (2) correctional officers stood over the
top of MAUS or stood (2) to (3) feet away
while MAUS testified against the (15)
defendunts "police officers" that where in
full uniforms sitting in the courtroom.

This made MAUS look more like a
dangerous inmate that couldn't be controlled
without prison restraints, and (20) to (25)
police officer's presents.

After Maus was done testifying Judge
Randa ordered the (2) correctional officers
to handcuff Maus back up infront of the
Jury, and walk Maus back to his seat
infront of the Jury. Lemons, Welborn and
Blagojevich. Then had one of the correcti-
onal officers sit next to Maus in the
courtroom.

These acts weren't only highly prejudicial
against Maus and his lawsuit, but every
time the Jury left and came back into the
courtroom. Maus was ordered to stand up
in full prison Greens and restraints infro
out of all the Jury members, so they could
see Maus looking like a dangerous and
violent person that had to be restrain-
ted with chains.

There wasn't any steps taken by Judge
Randa or the plaintiff's attorneys, to stop
the Jury from reviewing Maus as a
muster or dangerous person Lemons.

The court didn't even take steps to stop
the Jury from Reviewing Maus in full
prison Greens or restraints. Highly
prejudicial to Maus. Wood v. Thieret 5 F.3d
244 Id. at 13 (1993), Instead had Maus
marched inside and outside the courtroom

looking like some kind of moster That needed
to be controlled with chains.

There was Know way The defendants
where going to lose This lawsuit for using
excessive force against mias. The way
The court had mias presented to The Jury
and the way mias was moved inside and
outside The courtroom in prison restraints
and (2) or more officers escorting him
around.

In support of This argument. Judge
Randa made an order on October 15, 2012
stating:

"mias' criminal Record and The (2)
counts of an attempted battery
The defendants claim mias comm-
itted against Them cannot be dis-
closed to The Jury."

It didn't make any differents That
The court suppressed mias's criminal record
The court still abused it's discretion, and
had mias escorted around inside and outside
The courtroom infront of The Jury in full
prison Green's and restraints, and had (2)
or more officer's escorting him at all
times. To top This off. Judge Randa had
(20) to (25) police officers sitting inside

and outside the courtroom in full police uniforms, making Mays look more like a monster. That couldn't be controlled without the presents of all these police officers and prison restraints.

There was know way Mays was going to find an impartial Jury, the way the court had Mays chained up and the way Mays was presented to the Jury.

The court didn't hold a hearing outside the present of the Jury or before trial, to see if Mays was any kind of threat to the court, flight risk or to the security Lemons v. Skidmore 985 F.2d 354. Id. at 11, Harrell v. Israel, 672 F.2d 632. Id. at 8 and Woods v. Thienet, 5 F.3d 244 (1993).

Instead the court relied on a motion the defendant's filed on October 11, 2011. (Ref. Doc. 119), claiming Mays was a very dangerous and violent inmate, that should not be allowed to appear in court in street clothes or without prison restraints. Very presudicial.

The defendant's based their motion off of two (2) counts of an attempted battery case No. 07-CF-116. No certified Judgment of conviction, or anything else to support

this argument.

The defendants also based there motion off of claiming Maus was convicted of armed robbery, armed burglary with a dangerous weapon and bail Jumping. Again wasn't supported with a Certified copy of a Judgment of conviction or anything else. "Just the defendants word and motion."

In support of this argument the plaintiffs attorney's didn't object before trial or at trial, about making Maus appear in court in prison Greens or full restraints, and allowing the Jury to review Maus this way.

Maus even told his attorney's during trial that they need to object, to how highly presudicial it is to have Maus appearing infront of the Jury in prison Greens and full prison restraints. Maus' attorney's over and over told him to be quit or the court is going to hold him in contempt of court, and remove Maus from the courtroom.

On October 30, 2012. AFTER the Jury came back with a verdict in the defendants Furoe. Maus told all his attorney's that he wants them to appeal the Jury verdict,

because Maus was highly presudicial over
The way The court had Maus presented to
The jury in prison greens and FUll
restraints. Maus' attorney's told him That
his issues are frivolous even if not They
did have merit. Judge Randa isn't going to
change his ruling on how Maus had to
appear in court in prison greens and Full
restraints. Maus' attorney's told him They
aren't appealing The jury verdict. That if
Maus wants it appealed he will have to do
it himself.

On october 16, 2012. when Maus' attorney's
came and seen him at The Greenbay corr.
Inst., and told him about Judge Randa's
order that Maus has to wear prison Greens
and Full restraints during The trial. Maus
told his Attorney's Thats presudicail and
that They need to File a motion for
reconsideration, and argue. That its very
presudicial to make Maus appear in court
in prison Greens and Full restraints.

Maus' attorneys told him They cant file
a motion for reconsideration, because
Judge Randa isn't going to change his
ruling.

on October 15, 2012. Maus did a follow up letter on the same issues to his attorneys. They never answered Maus' letter.

Court's order of October 15, 2012 (Doc. 120) Stated:

"It will take steps to minimize the amount of prejudice to Maus, by instructing the Jury to disregard the restraints. When Maus is testifying."

The court took know steps to minimeze the prejudice to Maus. Instead The court had Maus marched around in The courtroom infront of the Jury like Maus was some kind of prison animal That could'nt be controlled without prison restraints and (25) police officee's being present.
The court didn't give The jury a jury an instruction to disregard the prison greens and restraints. Even if The court did. The Jury was still tainted, on The way the court had Maus presented to Them—

Court's order of October 15, 2012 (Doc. 120) stated:
"The court will order that the appear- ance of Maus' shackles to The Jury be

minimimized as much as possible, and The
court will also give a curative instruct-
ion" advising The jury to disregard The
restraints when assessing The testimony"

The court didn't do anything To minimize
The presudice or The prison greens or shackles
Maus was wearing, but instead had Maus
sitting right infront of The Jury, had him
marched inside and outside The courtroom
infront of The Jury, had Maus stand infront
of The Jury when They where coming In The
Courtroom, and leaving, and when Maus
went To get on The witness stand. Judge
Randa ordered Maus' handcuffs be removed
Infront of The Jury by (2) correctional officees
Then had These same officee's standing over
Maus, feet away when he was testifying.
Then had Maus rechained back up infront
of The Jury after he was done testifying.
Then had (1) of The correctional officee's
sit next To Maus, and at all times There
was (25) other police officer's in Full police
uniforms sitting feet away from Maus
In the courtroom, Making it more
presudice against Maus.

Case 2:09-cv-00042-RTR   Filed 12/05/12   Page 10 of 20   Document 131

The court didn't take steps to minimize the jury from seeing Marcus in prison restraints. There wasn't anything done, but instead the court had Marcus marched around in the courtroom like he some prison animal that could not be restrained without prison chains. Highly prejudice Marcus should be granted a new trial and be allowed not to appear in court in prison Greens or restraints.

Marcus was denied his constitutional rights to a fair trial, impartial jury and his 5th, 6th and 14th Amendments, and should be granted a new trial.

### Argument (2)

On october 29, 30, 2012. The court allowed the defendants to appear in court in there full police uniforms. This was highly prejudice to Marcus.

The defendants appearing in court infront of the jury in their police uniforms and badges highly prejudiced Marcus. It didn't only prejudice Marcus, but it beefed up the defendants testimony and made them look more credible infront of the jury, because they where seen as police officees, not as someone who would assault a person.

Then the Jury seen the plaintiff in full prison Greens and restraints, and (25) police officers sitting in the courtroom in full police uniforms. This was highly prejudice but the court made sure mays looked like some kind of ax killer, murder or prison Animal that couldn't be trusted and had to be in full prison Greens and restraints, and had a correctional officer sitting next to him at all times and (25) other police officers in full police uniforms sitting in the courtroom feet away from mays.

There was know way mays was going to win his excessive force lawsuit against the defendants, on the way the court allowed mays to be presented to the Jury, and how the defendants where allowed to be dressed in there full police uniforms.

The way mays was presented to the Jury wasn't prejudicial enough. The court allowed these same defendants in full police uniforms get on the witness stand and testify against mays claiming that (3) to (9) police officers ~~could~~ couldn't control mays at the time they where doing a cell extraction on him. That they had to use a tazer on mays to control him.

The court allowed mraus' attorney's and the defendants attorney's to present mraus to the jury as some kind of very dangerous and violent inmate that couldn't be controlled without prison restraints or a (25) man police presents, and no objections from mraus' attorneys.

The defendants testimony, uniforms and the way mraus was presented to the jury wasn't only highly presudiced, but scared the jury into believing mraus was some very violent and dangerous inmate that got what he had coming to him.

The court should of never allowed any of the defendants to appear in court wearing their police uniforms and badges. This look was highly presudice to mraus. Bember v. Hunt, 1995 U.S. Dist. Lexis. 725 at 10 and Ford v. Bell, 2012 U.S. Dist. Lexis. 57324. Id. at 7.

The plaintiff should be granted a new trial and all the defendants be ordered to wear citizens clothes. Violation of mraus' 5th, 6th and 14th Amendments.


Argument (3).

The defendants training and policy manuel on how they where trained on

on how to do cell extractions on inmates.

On September 19, 2012. The plaintiff's Attorney's filed a motion in limine (Plain DOC # 102), to be allowed to question the defendants about how they where all trained on how to do cell extractions on inmates, and how the Langlade County Sheriff's Dept., adopted the state of Wisconsin training manuel guidlelines on how to do cell extractions on inmates, and the Langlade County Sheriff's Dept., had these same guild lines in effect on January 15, 2007 and April 12, 2007. when they extracted Mans out of his cell. (Plain DOC # 111 # 8-28) Curties v. City of Chi, 2002 U.S. Dist. Lexis-24053, Grieveson v. Anderson 538 F.3d 763 (2008), Smith v. Village of bolton 2010 wh 744313 and buff v. Hammond, 2010 U.S. Dist. Lexis 55718 (2010).

On October 15, 2012. (DOC. #120 # pg# 6) Judge Randa granted Mans the right to question all the defendants about being trained on how to do cell extractions on inmates, and about the Langlade County Sheriff's Dept. having a cell extraction policy in effect on January 15, 2007 and April 12, 2007. when they extracted Mans

out of his cell.

On October 29, 30, 2012. During The trial
the plaintiff's Attorney's refused to question
any of the defendants about how they
where all trained on how to do cell
extractions on inmate's., and That The
Langlade County sheriff's Dept. and even
had a cell extraction policy in place on
January 15, 2007 and April 12, 2007. when
They extracted Maus out of his cell.

When Maus told his Attorneys at
trial to question The defendants about
being trained on how to do cell extractions
and how They didn't follow There own
training or policy at The time They
extracted Maus out of his cell. Maus' Attorn-
ey's kept telling him They will ask Them
question's later, and make That arguement
at closing how they didn't follow There own
training or policy's at The time of The cell
extractions.

Even Though all The defendants admit-
ted in interrogatories That They where all
trained on how to do cell extraction's on
inmates, and didn't follow Their training
(Plain Doc #111 #30), and That The Langlade
County sheriff's Dept., had a cell extraction
policy in place on January 15, 2007 and

and April 12, 2007, on how its officers shall extract inmates out of there cells and didn't follow it. (Plain Doc #111 #8-28 pgs 101-103) Maus' Attorney's refused to present this testimony or evidence to the jury to show the defendant's negligence, but instead presented a defense for the defendant's stating they should of used less forceful or alternative's moves to move Maus out of his cell. Nonething to do with the defendants own negligence of not following there own training or policy, but instead presented a defense for the defendant's to justify them illegally tazing and choking Maus.

Maus' attorneys also didn't question the defendants why they didn't video tape the cell extractions they did on Maus on January 15, 2007 and April 12, 2007, as the law requires even though Langlade County sheriffs Dept., had a hand held video camera to video tape the cell extractions. (Plain Doc #111 #30) Parker v. Krause-Hergst, 2010 U.S. Dist. Lexis-23905, mediaceja v. Horner 2003 U.S. App. Lexis. 24097, McMary v. Norman 1998 U.S. App. Lexis. 281 and Smith v. Bell, 1993 U.S. Dist. Lexis. 20396.

The plaintiff should be granted a new trial based on the grounds on how his Attorneys misrepresented him, and the way they helped the defendant win at trial and made sure Maus lost his excessive force claim against the defendants. Maus could of did a better Job representing himself. Then having the Attorneys he had. That werein't representing him but the defendants.

## Argument (4)

The court abused its discretion when it denied Maus his constitutional Right. To proceed against all the defendants for violating Maus' Fourth Amendment. When the defendants illegally video Taped Maus using the bathroom, changing clothes, sleeping etc. (Doc# 1) and (Doc# 3).
Between January 7, 2007 Through April 20, 2007. Maus was illegally placed in a receiving cell for days on end, that had a video camera in it, and video Taped everything Maus did, as sleeping, using the bathroom, changing clothes etc. without

Case 2:09-cv-00042-RTR   Filed 12/05/12   Page 17 of 20   Document 131

having a court order or getting permiss-
ion from Maus to video tape him. (Doc#1)
Maus was a pretrial detainee at the
time all the defendants where illegally
video taping Maus nude, useing the
bathroom, changing clothes and sleeping
etc. Hill v. McKinley, 311 F.3d 899 (8th
Cir.2002), Crosby v. Reynold, 763 F.supp.
666 (1991) and Wren v. Tucker, 2012 U.S.
Dist. Lexis. 13720.

    Maus didn't leave his Fourth Amendment
or constitutional rights outside the Langlade
County police dept., Jail, when he entered it
as a pretrial detainee Jones v. Thompson
818 F.supp. 1263.

    On August 27, 2012. (Def. Doc. #96) Attorney
Smith filed a motion to stop all oral and
video tape recordings from coming in at
trial. The defendant's own attorney tried
to protect Maus's privacy or Fourth Amend-
ment Rights, more then Maus's own
Attorney's did. Even though Attorney Smith
was off point on the law about a
pretrial detainee privacy rights. At
least Smith tried to stop the video tapes
from be disclosed at the trial, because
Smith knew it was a violation of

mavs's Fourth Amendment. McKinley and Tucker. Smith also knew this evidence was highly prejudice to mavs's defense.

On September 19, 2012. (Plain # Doc. 102) mavs's Attorney's filed a motion, and argued against Attorney Smith's motion. (Def. # 96) to bring in all the video tapes where Langlade County Sheriff's Dept., illegally video taped mavs for days on end using the bathroom, changing clothes, sleeping etc., (24) hours a day and violating mavs's privacy and Fourth Amendment rights. mavs's didn't give his attorney's or knowone else permission to video tape him, or disclose the video tapes to anyone else, or for that matter to a Jury.

mavs's Attorney's didn't disclose the video tapes to the Jury to help mavs' win his lawsuit against the defendant's for using excessive force against him when they illegally tazed mavs. mavs's Attorney's disclosed the illegal video tapes to the Jury to help the defendants win the lawsuit, and help the Jury justify why the defendants tazed mavs. The tapes made mavs look like some kind

of matter that couldn't be controlled without taring him. Maas' Attorney's disclosed the illegal video tapes to help justify the assault. There wasn't any other reason why Maas' Attorney's disclosed the video Tapes, but to help the defendant's win the lawsuit filed against them.

Maas should be granted a new trial and be allowed to sue all the defendant's for violating his Fourth Amendment and privacy Rights, as Maas' complaint requested (Doc #1).

## Conclusion

Maas should be granted a new trial, based on all the issues he raised in this motion, and be granted his constitutional right to sue all the defendant's for a Fourth Amendment violation, for illegally video taping him using the bathroom, changing clothes, sleeping etc.

November 29, 2012
Dated

Brian Maas
P.o. Box 19033
Green Bay wi
54307